UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RONALD BONNER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:20-cv-02088-ACA |
| } | |
| **COMMISSIONER,** } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Ronald Bonner appeals the Social Security Commissioner's partially favorable decision finding that he was disabled from December 1, 2016 through August 29, 2018. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Mr. Bonner applied for a period of disability, disability insurance benefits, and supplemental security income on July 24, 2018, alleging that his disability began on December 1, 2016. (R. at 19, 83–84). The Commissioner initially denied the claims (*id.* at 85–94), and Mr. Bonner requested a hearing before an administrative law judge ("ALJ") (*id.* at 99–100). After holding a hearing (r. at 40–58), the ALJ

issued a partially favorably decision (*id.* at 15–39). The ALJ found that Mr. Bonner was disabled from December 1, 2016 through August 29, 2018. (R. at 34). But the ALJ concluded that Mr. Bonner's disability ended on August 30, 2018, and that Mr. Bonner has not been disabled since that date. (*Id.*). The Appeals Council declined Mr. Bonner's request for review. (*Id.* at 1–6). The Appeals Council's denial of review makes the Commissioner's decision ripe for the court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c).

## II.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."

*Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III.  ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Where, as here, an ALJ determines whether a claimant continues to be disabled beyond a particular date, an ALJ follows an eight-step sequential evaluation process. The ALJ considers: (1) whether the claimant is engaging in substantial

3

gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment; (3) if not, whether there has been medical improvement; (4) if so, whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement or if medical improvement is not related to the claimant's ability to work, whether an exception to medical improvement applies; (6) if there is medical improvement related to the claimant's ability to work or if an exception applies, whether the claimant has a severe impairment; (7) if so, whether the claimant can perform his past relevant work; and (8) if not, whether the claimant can perform other work. 20 C.F.R. § 404.1594(f)(1)-(8).

In this case, the ALJ found that Mr. Bonner had not engaged in any substantial gainful activity since December 1, 2016. (R. at 23). For the period of time between December 1, 2016 through August 29, 2018, the ALJ found that Mr. Bonner's lumbar degenerative disc disease and osteoarthritis of the ankles were severe impairments but that his anxiety was a non-severe impairment. (*Id.*). The ALJ concluded that Mr. Bonner did not have any impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 25).

Upon consideration of the entire record, the ALJ determined that Mr. Bonner possessed the residual functional capacity to perform sedentary work, with a number

of exertional and postural limitations, including standing or walking for no more than one hour in an 8-hour work day and requiring two or three additional fifteen minute breaks due to his ankle pain. (R. at 26). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Mr. Bonner was unable to perform his past relevant work and that no other jobs existed in significant numbers in the national economy that Mr. Bonner could perform. (*Id.* at 27–29). Accordingly, the ALJ determined that Mr. Bonner was disabled, as defined by the Social Security Act, from December 1, 2016 through August 29, 2018. (*Id.* at 29).

The ALJ then evaluated whether Mr. Bonner continued to be disabled after August 29, 2018. As of August 30, 2018, the ALJ determined that Mr. Bonner had the same severe impairments as those present from December 1, 2016 through August 29, 2018. (R. at 29). The ALJ found that beginning August 30, 2018, Mr. Bonner had not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*). The ALJ then found that Mr. Bonner experienced medical improvement as of August 30, 2018. (*Id.* at 29–30).

Next, the ALJ found that Mr. Bonner's medical improvement was related to his ability to work because Mr. Bonner's residual functional capacity had increased. (R. at 30). The ALJ then determined that as of August 30, 2018, Mr. Bonner had the

residual functional capacity to perform a full range of sedentary work. (*Id.*). Based on Mr. Bonner's residual functional capacity, the ALJ found that Mr. Bonner was unable to perform his past relevant work. (*Id.* at 33). However, applying the Medical-Vocational Rules, the ALJ found that as of August 30, 2018, Mr. Bonner can perform jobs that exist in a significant number in the national economy. (R. at 34). Accordingly, the ALJ determined that Mr. Bonner's disability ended August 30, 2018, and that Mr. Bonner had not become disabled again since that date. (*Id.*).

## IV. DISCUSSION

Mr. Bonner argues that the court should reverse and remand the Commissioner's decision that his disability ended August 30, 2018 for three reasons: (1) the ALJ wrongly drew adverse inferences from lack of medical treatment; (2) the ALJ improperly rejected the opinion of examining physician Dr. Alphonza Vester; and (3) the ALJ's decision is not supported by substantial evidence. (Doc. 12 at 18–33).

### 1. Lack of Medical Treatment

Mr. Bonner's first argument is that the ALJ improperly drew adverse inferences from lack medical treatment to support his decision. (Doc. 12 at 18–20).

In finding that Mr. Bonner was not disabled as of August 30, 2018, the ALJ noted that Mr. Bonner had not sought medical treatment after November 2018. (R. at 31). Mr. Bonner claims that the ALJ should not have relied on lack of medical

6

treatment in assessing disability because Mr. Bonner testified that he could not afford medical treatment. (Doc. 12 at 18). Mr. Bonner's argument fails for two reasons.

First, Mr. Bonner did not testify that he could not afford treatment. Rather, during the administrative hearing, Mr. Bonner's attorney stated that Mr. Bonner "is uninsured and has not had the finances to get the medical treatment that he needs." (R. at 44). Mr. Bonner's counsel's statement is not evidence, and Mr. Bonner has pointed to no testimony or other evidence that he was unable to afford any prescribed medical treatment.

Second, even if Mr. Bonner's counsel's statement constitutes evidence about Mr. Bonner's inability to afford medical treatment, Mr. Bonner has not shown how the ALJ's reliance on that factor, in conjunction with other evidence of record, is reversible error. "[W]hen an ALJ relies on [treatment] noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment" then the ALJ must inquire into the claimant's reasons for not seeking the treatment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Here, the ALJ did not rely exclusively on Mr. Bonner's failure to seek medical treatment as a basis for finding that he was not disabled as of August 30, 2018. The ALJ's decision demonstrates that he thoroughly considered numerous medical records and the opinions of various

physicians. (R. at 30–33). Accordingly, the ALJ's reliance on limited medical treatment without any inquiry into Mr. Bonner's inability to afford treatment does not warrant remand. *See Ellison*, 355 F.3d at 1275.

    2.    <u>Dr. Vester's Opinion</u>

Mr. Bonner's second argument is that the ALJ improperly rejected the opinion of consultative examiner, Dr. Vester. (Doc. 12 at 20–30).

Dr. Vester examined Mr. Bonner in November 2019 at the request of the Agency. (R. at 575–586). Dr. Vester found that Mr. Bonner's back was "mildly tender without deformity on the right paraspinal lumbar area." (*Id.* at 577). In addition, Mr. Bonner's motor strength and grip strength were 5/5 and bilaterally symmetrical, and his sensory function was normal except for mildly diminished sensation in the fourth and fifth fingers of both hands. (*Id.*). His seated and supine leg raise was negative, and he had no muscular atrophy. Mr. Bonner also had good fine and gross use of his hands. (R. at 577). Dr. Vester did note that Mr. Bonner had an antalgic gait and that he seemed to ambulate better with a cane. (*Id.* at 577). Mr. Bonner did not perform the squat and rise or the heel or toe walk. (*Id.*).

Based on the examination, Dr. Vester opined that Mr. Bonner was not significantly limited with sitting, but that he was moderately limited with standing, walking, and handling objects. (R. at 578). Dr. Vester also stated that Mr. Bonner

was moderately to severely limited carrying objects but not limited with hearing or speaking. (*Id.*).

Dr. Vester later completed a medical statement in which he opined that Mr. Bonner could occasionally lift and carry up to twenty pounds. (R. at 581). He opined that Mr. Bonner could sit for two hours, stand for twenty minutes, and walk for ten minutes at one time without interruption. (*Id.* at 582). Dr. Vester also found that during an 8-hour work day, Mr. Bonner could sit for seven hours, stand for one hour, and walk for thirty minutes. (*Id.*). Dr. Vester found that a cane was medically necessary, and that Mr. Bonner could walk only five feet without use of cane. (R. at 582).

The ALJ found that the limitations Dr. Vester identified at the conclusion of his examination were inconsistent with many of his own examination findings and with the medical statement consisting of check forms which did not suggest that Mr. Bonner was as restricted as Dr. Vester previously suggested. (R. at 31).

Mr. Bonner raises five alleged errors related to the ALJ's treatment of Dr. Vester's medical opinion.

First, Mr. Bonner appears to argue that the ALJ substituted his opinion for that of Dr. Vester. (Doc. 12 at 20–23). Mr. Bonner cites a number of cases that stand for this general proposition, but he advances no specific argument regarding how the ALJ did so in this case. Nevertheless, although an ALJ may not make medical

9

findings, it is the ALJ's responsibility to resolve conflicts between medical opinions based on evidence in the record. *Watson v. Heckler*, 738 F.2d 1169, 1172. And that is what the ALJ did here.

Second, citing *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960 (11th Cir. 2015), Mr. Bonner argues that the ALJ "failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion of an examining physician." (Doc. 12 at 22). But the ALJ's specific explanation for rejecting Dr. Vester's opinion (*see* r. at 31) belies Ms. Bonner's position. Therefore, this argument is not persuasive.

Third, Mr. Bonner claims that the Commissioner seeks to impeach Dr. Vester's report by speculation. (Doc. 12 at 22). In support of this position, Mr. Bonner cites two Alabama Supreme Court decisions, *Cone v. Ragan*, 261 So. 2d 28 (Ala. 1972) and *Holloway v. Robertson*, 500 So. 2d 1056 (1986). (*Id.*). Mr. Bonner's reliance on *Cone* and *Holloway* is misplaced. These cases concerned evidentiary rulings by trial courts applying Alabama law during a jury trial. *See Cone*, 261 So. 2d at 28–30; *Holloway*, 500 So. 2d at 1061. This authority does not govern the ALJ's obligations or the court's review of the Commissioner's decision in a social security appeal. But in any event, the ALJ did not reject Dr. Vester's opinion based on

speculation. He compared Dr. Vester's identified limitations against Dr. Vester's own examination notes and other findings. (R. at 31).

Fourth, Mr. Bonner argues that the court should find that the ALJ improperly evaluated Dr. Vester's opinion based on the Seventh Circuit's "degree of suspicion" standard adopted in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). (Doc. 12 at 22–30). The Eleventh Circuit has not adopted this standard. Therefore, this court will not follow it either. But even if *Wilder* were controlling, *Wilder* is distinguishable from the facts of this case. In *Wilder*, the consulting physician's opinion was the only evidence of the claimant's impairments. *See Wilder*, 64 F.3d at 337–38. Here, the record contains other evidence and opinions about Mr. Bonner's limitations. Accordingly, *Wilder* does not assist Mr. Bonner.

Fifth, Mr. Bonner claims that the ALJ did not articulate "good cause" for rejecting Dr. Vester's opinion. (Doc. 12 at 20, 30). Mr. Bonner's brief offers nothing more in support of this conclusory statement. But to the extent Mr. Bonner suggests that Dr. Vester's opinion was entitled to great weight in the absence of good cause under the Eleventh Circuit's treating physician rule, this argument fails because Dr. Vester was a one-time examiner. *See Crawford*, 363 F.3d at 1160 (the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). And, as the ALJ did here, an ALJ "may reject the opinion of any physician when the evidence supports a

11

contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

    3.    <u>Substantial Evidence</u>

Mr. Bonner's final argument is that the ALJ's decision that he was not disabled as of August 30, 2018 is not supported by substantial evidence. (Doc. 12 at 30–33).

First, Mr. Bonner claims that the ALJ's decision is based on speculation, improper adverse inferences that the ALJ drew from lack of medical treatment, and the ALJ's improper rejection of Dr. Vester's medical opinion. (Doc. 12 at 31–32). These arguments are a mere recitation of those the court previously addressed and found unpersuasive. *Supra pp*. 6–11.

Second, Mr. Bonner argues that the ALJ's decision that he was not disabled as of August 30, 2018 is not supported by substantial evidence because the ALJ relied on vocational expert testimony that was not based on a correct or full statement of Mr. Bonner's limitations and impairments. (Doc. 12 at 32–33). This argument fails because it operates from the false premise that the ALJ relied on vocational expert testimony in finding that Mr. Bonner was not disabled as of August 30, 2018.

The ALJ did not consider vocational expert testimony in reaching the conclusion that Mr. Bonner was not disabled as of August 30, 2018. Instead, he applied the Medical Vocational Guidelines which directed that Mr. Bonner was not

disabled as of August 30, 2018 and that Mr. Bonner could perform jobs that exist in significant numbers in the national economy. (R. at 34). To determine whether jobs exist that a claimant can perform, an ALJ need not consult a vocational expert and may rely solely on the Medical Vocational Guidelines, as long as (1) the claimant can perform "a full range of work at a given residual functional capacity" and (2) the claimant's "non-exertional impairments [do not] significantly limit basic work skills." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (quotations omitted). Mr. Bonner does not challenge the ALJ's reliance on the Medical Vocational Guidelines in finding that he was not disabled as of August 30, 2018. (*See* doc. 12 at 32–33). Instead, he alleges error with the ALJ's finding based on a faulty factual premise, and remand is not required on this basis.

## V. CONCLUSION

For the reasons explained above, the court concludes that substantial evidence supports the ALJ's denial of Mr. Bonner's applications for a period of disability, disability insurance benefits, and supplemental security income after August 30, 2018. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this December 21, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE